UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 12 CR 540 |
| v. | ) | |
| | ) | Chief Judge Rubén Castillo |
| BYRON WILSON, aka "BJ," and | ) | |
| DARNELL WRIGHT, aka "Country" | ) | |

## GOVERNMENT'S MOTION TO PRECLUDE IMPROPER CROSS-EXAMINATION

The United States of America, by and through its attorney, ZACHARY T. FARDON, United States Attorney for the Northern District of Illinois, hereby respectfully moves *in limine* to preclude improper cross-examination by Wilson's attorney. On a number of occasions at the first trial, counsel for Wilson asked questions during cross-examination that were either argumentative or irrelevant. Although the government objected to a number of the questions and the Court sustained the objections, the damage was done by asking the questions and injecting improper issues and argument before the jury. The government moves for the Court to preclude these questions and similarly objectionable questioning at the trial set to commence on May 11, 2015.

As the Court will recall, the Court gave a jury instruction that provided: "The legality of any search or seizure you have heard testimony about in this case is not an issue for you to decide." The defense did not object to this instruction. Notwithstanding this instruction, counsel for Wilson asked a number of questions that suggested that the search of the Monte Carlo was illegal. For example, in

questioning Officer Martinez about the search of the Monte Carlo, counsel asked the following question:

Q:        Did you have a warrant for that?

A:        No.

Tr. at 143-44. (An excerpt of the cross-examination of Officer Martinez is attached as Government Exhibit A). After Officer Martinez testified that he did not tell Officer Lipsey about the search of the Monte Carlo (the government has no objection that that question), counsel for Wilson then asked, "Just kept it a secret to yourself?" The government objected to that question, and the Court sustained the objection.

The first question about the warrant was asked to convey the impression that the search of the Monte Carlo was illegal, or at least the question leaves that impression. But, as set forth in the jury instruction, whether a warrant was necessary for that search is a legal question that that is not at issue in this trial and not an appropriate question for a jury in any event. As a result, that question, and other questions suggesting that the government did not have legal authority to search the Monte Carlo are irrelevant and the defense should be barred from that line of cross examination.

The latter question—"Just kept it a secret to yourself?"—is an example of counsel for Wilson's tendency to ask argumentative questions on cross to inject defense arguments to the jury, regardless of whether the question is objectionable or even answered by the witness. In this instance, the government objected, the Court sustained the objection, and the witness did not answer. But the lack of an answer

did not matter for the defense; the point was to simply make that comment in front of the jury regardless of whether it was objectionable. The government requests that the Court preclude the defense from asking this question and similarly argumentative questions that are asked simply to improperly inject arguments before the jury.

After the Court sustained the objection to the "Just kept it a secret to yourself?" question, the cross continued and Officer Martinez stated that he did not tell FBI Agent Cyrian about the search of the Monte Carlo. At the end of that line of questioning, counsel for Martinez asked, "You kept that to yourself [the search of the Monte Carlo] until you got caught?" The government objected, the Court sustained the objection, and the witness did not answer. But again, the point of the question was not to elicit an answer. It was to simply ask the question and improperly put the defense argument before the jury. The question was argumentative and the defense should be precluded from asking that question and similarly argumentative questions at trial.

Counsel for Wilson asked similarly argumentative questions with other witnesses. For example, after Officer Nguyen testified about where he saw the Masterpiece Arms firearm and marijuana, the following exchange occurred during the cross-examination:

Q: You don't have any explanation for why somebody would be driving around with a sack of marijuana in plain view on their lap while they're operating a car do you?

AUSA: Objection, Your Honor.

3

COURT:    Sustained.

Q:    But if they are driving around with a sack of marijuana in plain view on their lap, that's convenient for you to make an arrest, isn't it?

AUSA:    Objection, Your Honor.

COURT:    Sustained.

Tr. at 53.  (An excerpt of the cross-examination of Officer Martinez is attached as Government Exhibit B.)  These are additional examples of questions that were objectionable, argumentative questions asked not for an answer but to improperly place defense arguments before the jury prior to closing argument.

For the reasons set forth above, the government moves to preclude improper cross-examination at trial.

Respectfully submitted,

ZACHARY T. FARDON
United States Attorney

By:    /s/ Matthew F. Madden
MATTHEW F. MADDEN
MARIBEL FERNANDEZ-HARVATH
Assistant United States Attorneys
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 886-2050

Dated: May 5, 2015

     1  after Mr. Wilson had been taken out of the car, right?
2  A. Yes.
3  Q. And according to you, the car sat there in gear resting
4  against the car in front of it for three to four minutes,
02:31:46  5  right?
6  A. Correct.
7  Q. And only then did somebody get in and put it in park.
8  That's what you're saying happened, right?
9  A. Correct.
02:31:53  10  Q. Okay. Now, I want to go back again to the Monte Carlo for
11  a minute.
12        So you said that -- well, you said today you said you
13  searched the Monte Carlo and looked through the car, right?
14  A. Briefly, yes.
02:32:15  15  Q. All right. And you did that because the Monte Carlo had
16  been mentioned as being part of the investigation?
17  A. Correct.
18  Q. You don't even know who owns the Monte Carlo, do you?
19  A. No, I do not.
02:32:30  20  Q. So you opened up and got in some car for some person you
21  don't even know who owns it?
22  A. Yes.
23  Q. Did you have a warrant for that?
24  A. No.
02:32:40  25  Q. Okay. And did you tell Officer Lipsey about it?



GOVERNMENT EXHIBIT

EXHIBIT A

1  A. No, I did not.
2  Q. So you -- you opened the car, you looked in there, and you
3  didn't tell the officer preparing the report.
4  A. No, I did not.
02:32:59
5  Q. Did you tell anybody?
6  A. I don't recall.
7  Q. Just kept it a secret to yourself?
8      MR. MADDEN: Objection, Your Honor.
9      THE COURT: Sustained.
02:33:11
10 BY MR. BRINDLEY:
11 Q. The Monte Carlo, after you got done looking at it, just
12 leave it with the doors standing open?
13 A. Did I leave the doors open?
14 Q. Yeah.
02:33:27
15 A. I don't recall if I left the doors open or not.
16 Q. So you think it might be possible you just left some car
17 sitting on Drake Street with the doors open and the trunk
18 open?
19     MR. MADDEN: Objection. He just said I don't recall.
02:33:38
20 Asked and answered.
21     MR. BRINDLEY: I asked him if it's possible.
22     THE COURT: You can answer that question.
23 BY THE WITNESS:
24 A. What was the question again? I'm sorry.
02:33:43
25 BY MR. BRINDLEY:

1 Q. Is it possible you just left the doors and the trunk
2 standing open on some car sitting on Drake Street?
3 A. It could be possible.
4 Q. Really. Were the keys in the car?
5 A. I don't recall any keys in the car.
6 Q. What was in the car? You said you looked in there. What
7 was in there?
8 A. Nothing.
9 Q. Completely empty.
10 A. Pretty clean.
11 Q. And you said you don't remember mentioning it to Officer
12 Lipsey, right?
13 A. That's correct.
14 Q. In fact, isn't it true, Officer Martinez, you never
15 mentioned anything about searching this Monte Carlo at all
16 until you were confronted with this photo, Defense Exhibit C,
17 at a prior proceeding; isn't that true?
18 A. I'm sorry, what was the question?
19 Q. The question is this, sir: Isn't it true that you never
20 mentioned anything about this whatever you did, looked in,
21 limited search, whatever it is of the Monte Carlo, you never
22 mentioned anything about that to anybody until you were
23 confronted with this photo, Defense Exhibit C, at a prior
24 proceeding; isn't that right?
25 A. That particular photo?

02:35:00

02:35:11

02:35:22

02:35:36

02:35:50

1  Q. Until you -- until you were confronted with a photo
2  showing the Monte Carlo with the doors open at a prior
3  proceeding in this case, until that happened, you never
4  mentioned this search to anybody, did you?
5  A. Today is the first time I saw that photo. I don't
6  remember seeing that photo any other time.
7  Q. Well, you testified at a prior proceeding, right?
8  A. Yes.
9  Q. And you were questioned about the Monte Carlo in this
10 photo, right?
11 A. It was a question regarding a Monte Carlo. I don't recall
12 it being about no photo.
13 Q. And until you were actually questioned about it and
14 challenged about it in court, you never told anybody about
15 that search of the Monte Carlo, did you?
16 A. Correct.
17 Q. Okay. You were interviewed by a Special Agent with the
18 FBI, Agent Brian Cyprian, right?
19 A. I believe so.
20 Q. And you were interviewed about the events of this case and
21 what you did and what happened, right?
22 A. Correct.
23 Q. And you didn't tell Special Agent Brian Cyprian anything
24 about going into the Monte Carlo that Mr. Wilson and
25 Mr. Wright had been in on that same day, did you?

1 A. Correct.
2 Q. You kept that to yourself until you got caught.
3     MR. MADDEN: Objection, Your Honor.
4 BY MR. BRINDLEY:
5 Q. -- right?
6     MR. MADDEN: It's repetitive.
7     THE COURT: Sustained.
8     MR. BRINDLEY: No further questions, Judge.
9     THE COURT: Okay, Ms. Shatz.
10     MS. SHATZ: Thank you.
11         CROSS-EXAMINATION
12 BY MS. SHATZ:
13 Q. I want to make sure I understand your testimony, Officer.
14     You pulled Mr. Wright out of the car; is that
15 correct?
16 A. Correct.
17 Q. And at the time you pulled Mr. Wright out of the car, the
18 Jaguar was up against the car in front of it; is that correct?
19 A. Correct.
20 Q. The way we saw it in the photo.
21 A. I didn't see any photos.
22 Q. Oh, let me get one for you.
23     MS. SHATZ: Your Honor, permission --
24     MR. BRINDLEY: That's not the one.
25     MS. SHATZ: Can I have one of your photos, please?

10:35:17

1 Q. Right?
2 A. The weapon was secured because I was in front of it. I
3 was in control of that weapon.
4 Q. Well, you said that you were getting in the car. You
5 injured your eye, right?
6 A. Yes.
7 Q. All this was happening at one time. You're jumping in
8 there, right?
9 A. That's correct.

10:35:23

10 Q. And you didn't know what was going on with this gun as you
11 jumped in the car, did you?
12 A. I knew it was on the floorboard.
13 Q. Now, Officer Nguyen, isn't the truth of the matter that
14 the only item of evidence that you actually recovered from

10:35:44

15 that car was that plastic bag of marijuana that was covered up
16 under clothes in the back seat of Mr. Wilson's Jaguar? Isn't
17 that the truth?
18 A. No.
19 Q. There wasn't any machine gun on the floorboard. That's

10:35:57

20 why you were willing to jump in there. Isn't that the truth?
21 A. There was the weapon on the floorboard.
22 Q. Okay. Certainly you would agree with me that it would
23 make a lot more sense to have your marijuana concealed in the
24 back seat than to be driving it around with it on your lap,

10:36:13

25 wouldn't it?

GOVERNMENT EXHIBIT

EXHIBIT B

        MS. FERNANDEZ-HARVATH: Objection.

        THE COURT: Overruled.

BY THE WITNESS:

A. I couldn't answer that. You would have to ask your client that.

BY MR. BRINDLEY:

Q. You can't answer whether or not that makes more sense?

A. I don't know.

Q. You don't have any explanation for why somebody would be driving around with a sack of marijuana in plain view on their lap while they're operating a car, do you?

        MS. FERNANDEZ-HARVATH: Objection, Your Honor.

        THE COURT: Sustained.

BY MR. BRINDLEY:

Q. But if they are driving around with a sack of marijuana in plain view on their lap, that's convenient for you to make an arrest, isn't it?

        MS. FERNANDEZ-HARVATH: Objection, Your Honor.

        THE COURT: Sustained.

BY MR. BRINDLEY:

Q. Now, you said today that when the officers pulled Mr. Wilson out of the car, that's when you saw the marijuana fall down to the floor and you saw it land on the gun, right?

A. Yes, I did.

Q. But you were also interviewed, you admitted a minute ago,